# United States District Court

## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

### VENUE: SAN FRANCISCO

---

UNITED STATES OF AMERICA,

V.

# CR  14    493

### MICHAEL Q. MAI

*WHA*

DEFENDANT(S).

---

# INDICTMENT

VIOLATIONS:
18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud and Wire Fraud;
18 U.S.C. §§ 1957 and 2 – Engaging in Monetary Transactions in Property Derived
from Specified Unlawful Activity and Aiding and Abetting;
18 U.S.C. § 981(a)(1)(C),
18 U.S.C. § 982(a)(1) & 28 U.S.C. § 2461(c) – Criminal Forfeiture

A true bill.

_____
                                    Foreman

Filed in open court this ___23rd___ day of

__September 2014__        KAREN L. ROSS

_____        Clerk
JOSEPH C. SPERO
UNITED STATES MAGISTRATE JUDGE

Bail, $ __Summons__ for 10/14/2014
at 9:30 AM before
Judge Laporte

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
☐ SUPERSEDING

─── **OFFENSE CHARGED** ───

Count 1: 18 U.S.C. § 1349 -- Conspiracy to Commit Mail Fraud and Wire Fraud
Count 2: 18 U.S.C. § 1957 -- Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity
Forfeiture allegation

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY: Count 1: 20 yrs imprisonment, $250K fine or twice gross gain or gross loss, whichever is greater, 3 yrs supervised release, $100 special assessment, rest., forf.; Count 2: 10 years' imprisonment, $250K fine or twice amt of property involved in transaction, 3 yrs supervised release, $100 special assessment, rest., forf.

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

*FILED*

─── **DEFENDANT - U.S** ───

▶ MICHAEL Q. MAI

SEP 23 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DISTRICT COURT NUMBER

**CR  14  493**

**WHA**

─── **PROCEEDING** ───

Name of Complainant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE  } SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant  } MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under }

Name and Office of Person
Furnishing Information on this form    MELINDA HAAG

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)    Kyle Waldinger/Hallie Hoffman

─── **DEFENDANT** ───

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction  } ☐ Federal  ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer  ☐ Yes  If "Yes"
been filed?  ☐ No  give date filed

Month/Day/Year
DATE OF ARREST ▶

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ▶  Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

─── **ADDITIONAL INFORMATION OR COMMENTS** ───

PROCESS:
☒ SUMMONS  ☐ NO PROCESS*  ☐ WARRANT    Bail Amount:

If Summons, complete following:
☒ Arraignment  ☒ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: Oct. 14, 2014, 9:30am    Before Judge: Elizabeth D. Laporte

Comments:

1  MELINDA HAAG (CABN 132612)
   United States Attorney

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11  UNITED STATES OF AMERICA,              )

12        Plaintiff,                        )   **VIOLATIONS:** 18 U.S.C. § 1349 – Conspiracy to
                                            )   Commit Mail Fraud and Wire Fraud; 18 U.S.C.
13        v.                                )   §§ 1957 and 2 – Engaging in Monetary Transactions
                                            )   in Property Derived from Specified Unlawful Activity
14  MICHAEL Q. MAI,                         )   and Aiding and Abetting; 18 U.S.C. § 981(a)(1)(C),
                                            )   18 U.S.C. § 982(a)(1) & 28 U.S.C. § 2461(c) –
15                                          )   Criminal Forfeiture
          Defendant.                        )
16  _____)   SAN FRANCISCO VENUE

17                          I N D I C T M E N T

18        The Grand Jury charges:

19                      INTRODUCTORY ALLEGATIONS

20        At all times relevant to this Indictment:

21        1.      The defendant, Michael Q. MAI, was an individual who resided in Orange County in the

22  Central District of California.

23        2.      Dearborne Circle, LLC ("Dearborne"), was owned and controlled at least in part by MAI,

24  and MAI held himself out to be the President of Dearborne.  Dearborne's principal place of business was

25  purported to be MAI's residence in Orange County.

26        3.      BPMB, Inc. ("BPMB"), was owned and controlled at least in part by MAI.

27        4.      The co-conspirator C.K. was an individual who resided in the Northern District of

28  California.  C.K. was held out to be the "contracts manager" for Dearborne.

INDICTMENT

5.     The co-conspirator Quin Rudin was an individual who resided in Southern California. Rudin held himself out as being associated with both Dearborne and Certus Solutions, Inc. ("Certus").

6.     Oracle America, Inc. (formerly known as Oracle USA, Inc.) ("Oracle"), was headquartered in San Mateo County in the Northern District of California.  Oracle was a subsidiary of Oracle Corporation, which was also headquartered in San Mateo County.  Oracle was in the business of providing database and applications software to businesses and organizations, among other products.

7.     In addition to relying on its own employees to market its software, Oracle also relied on third-party re-sellers, or "Partners," to do so.  Upon meeting certain requirements, such Partners were allowed to sell customers licenses to use Oracle software.

8.     The Pension Benefit Guaranty Corporation ("PBGC") was an agency of the United States Government, with its principal offices located in Washington, D.C.

COUNT ONE:          (18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud and Wire Fraud)

9.     The factual allegations in paragraphs 1 through 8 are re-alleged and incorporated herein as if set forth in full.

10.     Beginning on a date unknown to the Grand Jury, but by no later than in or about August 2009, and continuing until on or about October 31, 2009, both dates being approximate and inclusive, in the Northern District of California and elsewhere, the defendant,

MICHAEL Q. MAI,

did knowingly and willfully conspire and agree with Quin Rudin and C.K. to devise, participate in, and execute a material scheme and artifice to defraud, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, and by means of concealment of material facts, and, for the purpose of executing such scheme and artifice, did knowingly and intentionally cause certain matters and things to be delivered by the United States Postal Service and by private and commercial interstate carrier according to the direction thereon, in violation of Title 18, United States Code, Section 1341, and did knowingly and intentionally cause to be transmitted, in interstate commerce, by means of a wire communication, certain writings, signs, and signals, in violation of Title 18, United Sates Code, Section 1343.

///

## MANNER AND MEANS OF THE CONSPIRACY AND THE SCHEME TO DEFRAUD

11.     In sum and substance, MAI, C.K., and Rudin agreed that they would fraudulently induce Oracle to permit Dearborne/Certus to re-sell Oracle software, licenses, and technical support services to the PBGC, and that they then would fail, decline, and refuse to pay Oracle for such software, licenses, and technical support services, even after Dearborne/Certus had received payment from the PBGC.

12.     In furtherance of this agreement, on or about August 13, 2009, in the Northern District of California, C.K. found a solicitation posted by the PBGC on an Internet web site, which solicitation sought bids to sell Oracle database software to the PBGC. Thereafter, Dearborne was one of at least three entities that submitted such a bid to the PBGC. MAI submitted that bid on behalf of Dearborne over the Internet.

13.     On or about August 28, 2009, the PBGC accepted Dearborne's bid to sell software, licenses, and technical support services for $908,504.85, which was lower than the bids submitted by other entities. On or about the same day, a PBGC employee signed a purchase order to Dearborne in that amount. MAI also signed the purchase order as President of Dearborne.

14.     Dearborne was not an authorized Oracle Partner or re-seller. However, Certus was part of the Oracle Partner Network. Accordingly, MAI and Rudin engaged in the following correspondence with Oracle employees, which was intended both to lead those employees to believe that Dearborne and Certus were one in the same and to induce Oracle to allow this Dearborne/Certus entity to conduct the PBGC transaction:

      a.     In an e-mail sent on or about August 28, 2009, MAI informed an Oracle employee in Virginia that Dearborne "has 100% percent [sic] ownership of Certus Solutions, Inc."

      b.     Rudin told an Oracle employee in Virginia in an e-mail sent on or about August 28, 2009, that Dearborne had acquired Certus "to offer Federal customers oracle tech/apps [sic] solutions." MAI and C.K. were copied on this e-mail.

      c.     On or about August 31, 2009, as part of the process of receiving credit approval from Oracle to allow Dearborne/Certus to conduct the PBGC transaction, MAI informed an Oracle employee in India by e-mail that Dearborne "acquired Certus Solutions Inc at the end of 2008." With this e-mail, MAI provided the Oracle credit employee with a consolidated profit

INDICTMENT                                                      3

1      and loss statement and a consolidated balance sheet for Dearborne. These documents purported

2      to show that Dearborne had a net income for year-to-date 2009 of $2.3 million and total equity of

3      $8.4 million.

4  These representations regarding the ownership structure of Dearborne and Certus and regarding

5  Dearborne's financial condition were false, and they were material to Oracle's decisions as to whether to

6  allow Dearborne/Certus to conduct the PBGC transaction.

7      15.    With the e-mail sent by Rudin on or about August 28, 2009, referenced above, Rudin

8  attached a completed Oracle Public Sector Partner Ordering Document proposing that Dearborne/Certus

9  would purchase Oracle software licenses and technical support rights to re-sell to the PBGC at a steeply

10  discounted price. This Ordering Document listed MAI as the Partner contact and C.K. as the Partner

11  contract administrator. The Ordering Document was purportedly executed by MAI. As alleged above,

12  MAI and C.K. were copied on this e-mail. At the time of this e-mail, neither MAI, nor C.K. and Rudin,

13  intended to pay Oracle any significant portion of this proposed price.

14      16.    In connection with the PBGC transaction, on or about August 31, 2009,

15  Dearborne/Certus issued a purchase order to Oracle for the purchase of the software, licenses, and

16  technical support services. The purchase order reflected the final negotiated price of $874,996.20.

17      17.    On or about September 24, 2009, MAI caused an invoice to be sent by the United States

18  Postal Service or private or commercial interstate carrier, and by e-mail, to the PBGC in Washington,

19  D.C. The amount of the invoice was $908,504.85.

20      18.    The PBGC was thereafter provided with the database software and licenses that were the

21  subject of Dearborne's bid. The PBGC also received the right to the first year of Oracle technical

22  support services for those products. On or about October 8, 2009, the PBGC caused a United States

23  Treasury check in the amount of $908,504.85 to be sent by the United States Postal Service or private or

24  commercial interstate carrier to MAI's home address in Orange County, California, which was also the

25  business address for Dearborne. This check represented the PBGC's payment for the Oracle software,

26  licenses, and technical support services.

27      19.    On or about October 14, 2009, MAI deposited the $908,504.85 check into a Bank of

28  America account held by MAI in the name of Dearborne and numbered ending -8095. MAI then took

INDICTMENT             4

the following actions, among other actions, with respect to the funds that he had received from the PBGC:

    a.    initiated transfers by various means (including by direct transfer and cashier's check) in the amounts of $50,000, $100,000, $100,000, $101,000, and $100,000 into a Bank of America account held in the names of MAI and the individual S.N. and numbered ending -0044 between on or about October 15, 2009, and on or about October 31, 2009;

    b.    obtained a cashier's check in the amount of $80,000 made payable to "BPMP INC" [sic] and deposited it into the Bank of America account held by MAI in the name of BPMB and numbered ending -8265 ("-8265 Account") on or about October 26, 2009;

    c.    initiated transfers of $27,000, $2,000, and $30,000 to BPMB's -8265 Account between on or about October 20, 2009, and on or about October 31, 2009; and

    d.    obtained a cashier's check in the amount of $105,000 on or about October 26, 2009, which check was provided to a company in the Northern District of California (identified here as "N.E. Company") as a partial payment for the purchase of an American 9260 crane.

20.    Ultimately, several hundred thousand dollars of the funds that MAI obtained from the PBGC were transferred by MAI to an E-Trade account held in his name and numbered ending -0933. MAI also provided thousands of dollars of the PBGC funds to C.K. in the Northern District of California and to Rudin.

21.    On or about October 21, 2009, Oracle invoiced Dearborne/Certus in the amount of $874,996.20, excluding taxes. Neither MAI, nor Rudin and C.K., ever paid any part of this invoiced amount to Oracle.

All in violation of Title 18, United States Code, Section 1349.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

INDICTMENT                5

COUNT TWO: (18 U.S.C. §§ 1957 and 2 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity and Aiding and Abetting)

22. The factual allegations in paragraphs 1 through 8 and 10 through 21, including those related to the scheme to defraud described therein, are re-alleged and incorporated herein as if set forth in full.

23. Among other financial transactions, on or about October 28, 2009, in the Northern District of California and elsewhere, the defendant,

MICHAEL Q. MAI,

did knowingly engage and attempt to engage in a monetary transaction by and through a financial institution, in and affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the provision of a cashier's check in the amount of $105,000 to the company identified here by its initials, N.E. Company, which check was deposited into N.E. Company's Citibank account domiciled in San Francisco, California, such funds having been derived from a specified unlawful activity, that is, wire fraud, mail fraud, and conspiracy to commit mail fraud and wire fraud.

All in violation of Title 18, United States Code, Sections 1957 and 2.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

INDICTMENT 6

<u>FORFEITURE ALLEGATION:</u>    (18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1) & 28 U.S.C. § 2461(c) – Criminal Forfeiture)

24.    All of the allegations contained in this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1), and 28 U.S.C. § 2461(c).

25.    Upon a conviction for the offense alleged in Count One, the defendant,

MICHAEL Q. MAI,

shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) all property constituting, and derived from, proceeds the defendant obtained directly and indirectly, as the result of those violations, including, but not limited to, the following real property or personal property:

a.    the funds in the E-Trade account held in the name of Michael MAI, numbered ending -0933;

b.    American 9260 crane;

c.    the funds in the Bank of America account held in the name of Dearborne Circle, LLC, numbered ending -8095;

d.    the funds in the Bank of America account held in the names of Michael MAI and S.N., numbered ending -0044; and

e.    the funds in the Bank of America account held in the name of BPMB, Inc., numbered ending -8265.

26.    Upon conviction of any of the offenses alleged in Count Two, the defendant,

MICHAEL Q. MAI,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real and personal, involved in the money laundering violation alleged in Count Two.

27.    If any of the aforementioned property, as a result of any act or omission of the defendant –

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third person;

c.    has been placed beyond the jurisdiction of the Court;

INDICTMENT                                7

1          d.       has been substantially diminished in value; or

2          e.       has been commingled with other property that cannot be divided without difficulty;

3    any and all interest the defendant has in other property shall be vested in the United States and

4    forfeited to the United States pursuant to 21 U.S.C. § 853p, as incorporated by 18 U.S.C. § 982(b)(1)

5    and 28 U.S.C. § 2461(c).

6          All in violation of Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States

7    Code, Section 982(a)(1), Title 28, United States Code, Section 2461(c), and Rule 32.2 of the Federal

8    Rules of Criminal Procedure.

9

10   DATED:                                                  A TRUE BILL.
           9/23/14

11

12                                                          FOREPERSON

13

14   MELINDA HAAG
     United States Attorney

15

16

17   J. DOUGLAS WILSON
     Chief, Criminal Division

18

19   (Approved as to form:
                            AUSAs WALDINGER/HOFFMAN

20

21

22

23

24

25

26

27

28

INDICTMENT                              8